**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 29 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LOYD W. LAFEVERS,

        Petitioner-Appellant,

v.

GARY E. GIBSON, Warden,
Oklahoma State Penitentiary,

        Respondent-Appellee.

No. 00-6381

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CIV-97-281-L)**

Patrick J. Ehlers, Jr. (Susan M. Otto, Federal Public Defender, with him on the brief) Assistant Federal Public Defender, Oklahoma City, Oklahoma, for Petitioner-Appellant.

Jennifer B. Miller (W.A. Drew Edmondson, Attorney General, with her on the brief), Assistant Attorney General, Oklahoma City, Oklahoma, for Respondent-Appellee.

Before **BRORBY** , **PORFILIO** , and **MURPHY** , Circuit Judges.

**MURPHY** , Circuit Judge.

Loyd Winford LaFevers appeals [1] the district court's dismissal of his second 28 U.S.C. § 2254 habeas petition. [2] The district court dismissed the petition after concluding that it failed to satisfy the requirements of 28 U.S.C. § 2244(b)(2)(B)(ii). Section § 2244(b)(2)(B)(ii) requires that a claim in a second or successive § 2254 habeas application that was not presented in a prior petition shall be dismissed unless

> the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

A panel of this court with one judge dissenting authorized LaFevers to file the second habeas petition. *See* 28 U.S.C. § 2244(b)(3)(A). That authorization, however, merely represented this court's determination that LaFevers had made a *prima facie* showing that he could meet the requirements of § 2244(b). *See id.* § 2244(b)(3)(C) ("The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection."). Upon the filing of LaFevers' second § 2254 petition, the district court was

---

[1] This court has jurisdiction to review the district court's dismissal of LaFevers' second § 2254 habeas petition because the district court granted LaFevers a certificate of appealability. *See* 28 U.S.C. § 2253(c).

[2] This court previously affirmed the district court's denial of LaFevers' first § 2254 habeas petition. *See LaFevers v. Gibson*, 182 F.3d 705 (10th Cir. 1999).

-2-

obligated to determine whether the petition did, in fact, satisfy the requirements of § 2244(b). *See id.* § 2244(b)(4) ("A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section."). [3]

Pursuant to this court's grant of permission, LaFevers filed his second § 2254 petition on September 15, 2000. In his second petition, LaFevers raised the following two claims: (1) Oklahoma knowingly adduced at trial false evidence concerning blood stains found on a pair of jeans ("Exhibit 83") in violation of *Giglio v. United States*, 405 U.S. 150 (1972) and *Brady v. Maryland*, 373 U.S. 83 (1963); and (2) trial counsel was ineffective for failing to have those blood stains

---

[3] *See also Nevius v. McDaniel*, 218 F.3d 940, 943-44 (9th Cir. 2000) (holding that despite court of appeals' grant of permission to file second or successive § 2254 petition, district court had independent "duty under § 2244(b)(1) and (2) to examine each claim of the second petition and to dismiss the claims that did not meet the requirements of those subsections"); *United States v. Villa-Gonzalez*, 208 F.3d 1160, 1165 (9th Cir. 2000) (rejecting contention that court of appeals' grant of permission to file second habeas petition is binding on district court and, instead, concluding that "a district court must conduct a thorough review of all allegations and evidence presented by the prisoner to determine whether the motion meets the statutory requirements for the filing of a second or successive motion"); *Bennett v. United States*, 119 F.3d 468, 470 (7th Cir. 1997) (holding that grant of permission to file a second habeas petition is "tentative in the following sense: the district court must dismiss the motion that we have allowed the applicant to file, without reaching the merits of the motion, if the [district] court finds that the movant has not satisfied the requirements for the filing of such a motion").

analyzed. The district court, after independently reviewing the petition and its accompanying exhibits, concluded LaFevers had failed to meet § 2244(b)(2)'s requirements; the district court, therefore, dismissed the petition. In the alternative, the district court denied LaFevers habeas relief on the merits. LaFevers now appeals the district court's dismissal and denial of relief, but only as to his *Brady/Giglio* claim. [4]

---

[4] At oral argument, counsel for LaFevers equivocated as to whether LaFevers was attempting to raise a claim based on the DNA testing of Exhibit 83 *independent of* the *Brady/Giglio* claim. Nevertheless, an exceedingly close review of LaFevers' second § 2254 petition, his filings in this court, and the entire appellate record reveals that LaFevers has never asserted that the results of the DNA testing constitute an independent ground entitling him to habeas relief. Instead, LaFevers has simply asserted that those results, which demonstrate that none of the blood on Exhibit 83 came from the murder victim, support his assertion that Joyce Gilchrist lied at trial about both the ability to perform and the actual performance of electrophoresis testing on Exhibit 83. Even if, however, LaFevers' appellate filings could be read as asserting an independent habeas claim based solely on the results of the DNA testing, that claim would necessarily fail. The only conceivable basis for such an independent claim, *i.e.*, a claim uncoupled from LaFevers' *Brady/Giglio* claim, would be an assertion that the DNA testing demonstrates LaFevers is actually innocent of both the crime and the death penalty. As set forth below in addressing LaFevers' *Brady/Giglio* claim, however, the absence of the victim's blood on Exhibit 83 does not demonstrate LaFevers' actual innocence. Furthermore, an assertion of actual innocence, although operating as a potential pathway for reaching otherwise defaulted constitutional claims, does not, standing alone, support the granting of the writ of habeas corpus. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); *id.* at 401 ("Few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence."); *Sellers v.*

(continued...)

-4-

LaFevers' *Brady*/*Giglio* flows from the trial testimony of state chemist Joyce Gilchrist. At trial, Oklahoma adduced a pair of pants, Exhibit 83, and asserted that the pants belonged to LaFevers.[5] Gilchrist testified that there were two types of blood on the pants, Types O and B. In light of testimony that both the victim and Randall Cannon, LaFevers' co-defendant, had Type O blood, defense counsel asked Gilchrist whether there were tests available to determine whether the blood on the pants came from Cannon or the victim. Gilchrist testified that it was possible that electrophoresis testing could make that determination, but that she had not undertaken electrophoresis testing because the blood samples were not of a sufficient size. During its closing argument, Oklahoma asked the jury to infer as follows: (1) the pants belonged to LaFevers because of their length; (2) the Type O blood on the pants belonged to the victim; and (3) the existence of the victim's blood on the pants demonstrated that LaFevers was an active participant in the beating of the victim before she was set on fire.

---

[4](...continued)
*Ward*, 135 F.3d 1333, 1338-39 (10th Cir. 1998) (discussing *Herrera*).

[5] It must be noted that the parties vigorously contested at trial whether the pants actually belonged to LaFevers and, even if they did, whether they were the pants he wore the night of the murder. In fact, defense counsel adduced testimony from Bessie McIntire, a prosecution witness who provided damning testimony against LaFevers, that Exhibit 83 was not the pair of pants worn by LaFevers the night of the murder.

When habeas counsel ultimately succeeded in having Exhibit 83 submitted for DNA testing, the testing revealed that the blood on the pants actually belonged to Cannon, not the victim. In light of those test results, LaFevers sought access to the notes and log of Gilchrist. In his second § 2254 habeas petition, LaFevers asserted that notes turned up during the review of Gilchrist's files demonstrate that she lied in the following two particulars at trial: (1) she lied when she asserted that the blood splatters on the pants were not sufficiently large to conduct electrophoresis testing; and (2) she lied when she testified that she had not conducted electrophoresis testing on the pants.

In analyzing LaFevers' *Brady/Giglio* claim, the district court "assume[d] that [LaFevers] can prove the prosecutor knowingly and purposefully introduced false and misleading testimony regarding the blood stains on State's Exhibit No. 83 in violation of his constitutional rights." Dist. Court Order at 7. Acknowledging the exceedingly high standard set out in § 2244(b)(2)(B)(ii), however, the district court noted that it must move on "to look at the entirety of the evidence and determine whether [LaFevers] has shown by clear and convincing evidence that a reasonable factfinder would not have found [LaFevers] guilty of the murder" absent the constitutional violation. *Id.* After an exacting review of the record, the district court answered that question in the negative. In so doing, the district court flatly rejected LaFevers' contention that Exhibit 83

was the lynchpin of the prosecution's case.  In fact, as noted by the district court, the trial record is replete with independent, direct evidence that LaFevers was an active participant in the murder of the victim.  Accordingly, the district court concluded that LaFevers had not satisfied the heavy statutory burden of proving by clear and convincing evidence that but for the *Brady*/*Giglio* violation no reasonable juror would have found him guilty of the crime.  Although LaFevers urged the district court to analyze the impact that the assumed *Brady*/*Giglio* violation might have had on the jury's imposition of the death penalty, the district court declined.  According to the district court, such a review is prohibited by the express terms of § 2244(b)(2)(B)(ii) which speaks only to innocence of the "underlying offense."

A district court's dismissal of a second § 2254 petition on the grounds that the petition does not satisfy the requirements of § 2244(b) is a legal conclusion which this court reviews *de novo* . *See United States v. Villa-Gonzalez* , 208 F.3d 1160, 1165 (9th Cir. 2000).  For purposes of this appeal, the only issues presented are whether LaFevers has shown by clear and convincing evidence that absent the assumed *Brady*/*Giglio* violation, no reasonable factfinder would have convicted him of first degree murder or sentenced him to death.  Like the district court, we conclude that LaFevers has failed to satisfy his statutory burden under § 2244(b)(2)(B)(ii) as to his underlying murder conviction.  This court reaches the

same conclusion as to LaFevers' sentence of death. We, therefore, find it unnecessary to resolve whether § 2244(b)(2)(B)(ii) contemplates a claim that a successive petitioner in LaFevers' position can be innocent of the death penalty.

The district court set out at some length the substantial evidence independent of Exhibit 83 demonstrating LaFevers' direct participation in the murder. This court will not simply repeat that thoughtful analysis. Suffice it to say that the testimony of William Ryan, George Gaither, Cathy Baker, Lisa Collins, Bruce Hawkins, Doris Parkey, Bessie McIntire, Roy Goolsby, and Sam Cannon [6] provide ample evidence of LaFevers direct participation [7] in the murder so that even if the bloody pants are completely factored out of the equation, a rational jury could have convicted LaFevers of first degree murder. Nor,

_____

[6] On appeal, LaFevers expends substantial energy arguing that many of these witnesses are inherently incredible. As noted by the district court, however, some of these credibility issues were explored by the parties at trial and submitted to the jury. The jury obviously resolved the credibility questions in favor of the prosecution. More importantly, to the extent that LaFevers' attacks on these witnesses represent post-trial credibility challenges, this court fails to see how they address LaFevers' burden under § 2244(b)(2)(B)(ii).

[7] This court notes that in addition to setting out the substantial evidence independent of Exhibit 83 demonstrating LaFevers' direct participation in the murder, the district court noted that the jury had been instructed on aider and abettor liability and concluded that the evidence relating to LaFevers' role as an aider and abettor was overwhelming. In light of this court's conclusion that LaFevers has failed to carry his burden of demonstrating that no rational juror could conclude that he was a direct participant in the murder, even completely factoring out the evidence relating to Exhibit 83, we need not reach the district court's alternate holding.

alternatively, is this court clearly convinced that the evidence relating to Exhibit 83, heavily contested as it was at trial, is of such a magnitude that a reasonable juror would rely on that evidence to the exclusion of all of the other evidence cited above in finding LaFevers guilty of murder. Accordingly, LaFevers cannot demonstrate by clear and convincing evidence that but for the assumed *Brady/Giglio* violation no reasonable factfinder would have found him guilty of this murder.

As noted above, the district court concluded that § 2244(b)(2)(B)(ii) did not authorize it to consider the impact of the assumed *Brady/Giglio* violation on the jury's decision to impose the death penalty. *See* 28 U.S.C. § 2244(b)(2)(B)(ii) (providing that a successive habeas petitioner must demonstrate by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty *of the underlying offense*" (emphasis added)). As recognized by the parties on appeal, there is a split among the three circuits that have addressed the question. *Compare Babbitt v. Woodford*, 177 F.3d 744, 746 (9th Cir. 1999) (holding "underlying offense" language in § 2244(b)(2)(B)(ii) does encompass death sentence challenges), *petition for cert. filed*, (U.S. May 4, 1999) (No. 98-9210), *with In re Jones*, 137 F.3d 1271, 1274 (11th Cir. 1998) (holding "underlying offense" language in § 2244(b)(2)(B)(ii) does not encompass death sentence challenges) *and Hope v. United States*, 108

F.3d 119, 120 (7th Cir. 1997) (same). This court need not resolve that difficult question because even assuming § 2244(b)(2)(B)(ii) does encompass challenges to a death sentence, LaFevers' challenge to his death sentence would fail for the same reasons set out above with regard to his underlying conviction. LaFevers' primary contention on appeal is that absent the evidence regarding the pants he could have made a "powerful" relative culpability argument that the mitigating circumstances outweighed the aggravating circumstances. Like his argument with regard to the underlying conviction, this argument is entirely dependent on LaFevers' assertion that Exhibit 83 was the central spoke in the prosecution's direct participation theory at trial. As noted above, however, that argument is simply not borne out by the record, especially considering the heavy burden of persuasion imposed upon LaFevers by § 2244(b)(2)(B)(ii). Furthermore, this court would be remiss if it failed to mention that the facts of this murder are particularly vile. *See LaFevers*, 182 F.3d at 709 (noting that the elderly victim was both brutally beaten and then, while still alive, doused with gasoline and set on fire). Finally, although the prosecution incorporated all of the evidence adduced during the guilt phase into the penalty phase, our reading of the transcript of the penalty phase leads this court to conclude that Exhibit 83 played an even lesser role in the penalty phase than it did in the guilt phase. In sum, this court has carefully considered LaFevers' arguments and concludes that he has not

carried his burden under § 2244(b)(2)(B)(ii) of demonstrating that, but for the assumed *Brady*/*Giglio* violation, his relative culpability arguments would have carried the day.

The judgment of the United States District Court for the Western District of Oklahoma dismissing LaFevers' second § 2254 petition pursuant to § 2244(b)(2)(B)(ii) is hereby **AFFIRMED** .