FILED
United States Court of Appeals
Tenth Circuit

**July 11, 2011**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

STEVE NATHANIEL JACKSON,

        Defendant - Appellant.

No. 11-2077

(D. New Mexico)

(D.C. Nos. 1:10-CV-00713-RB-KBM
and 2:06-CR-01795-RB-1)

---

**ORDER DENYING
CERTIFICATE OF APPEALABILITY**[*]

---

Before **LUCERO**, **ANDERSON**, and **GORSUCH**, Circuit Judges.

---

Petitioner and appellant Steve Nathaniel Jackson, proceeding *pro se*, seeks a Certificate of Appealability ("COA") to enable him to appeal the dismissal of his 18 U.S.C. § 2255 petition. Concluding that he has not satisfied the requirements for the issuance of a COA, we deny his request for a COA and dismiss this matter.

---

[*]This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

Mr. Jackson was on parole, and had given his supervising officers two addresses where they could contact him. One house, "203 South Douglas," was the home of his aunt, Ruby Patterson. The other house, "208 South Douglas," was directly across the street and was the home where Mr. Jackson and his girlfriend, Idela Royals, sometimes stayed. Mr. Jackson subsequently testified that the 208 address was a "family home" that he owned and had bought for his mother, and that he allowed family and friends to live there.

Pursuant to the terms of his parole, both homes could be visited by his parole officers. During a routine check on parolees, parole officers went to the 208 South Douglas address, after finding Mr. Jackson unavailable at the 203 South Douglas address. As described in our direct appeal affirming Mr. Jackson's conviction, New Mexico Probation and Parole Officer Mark Cubillos

> knocked on the front door while other officers positioned themselves around the house. Cubillos heard "quick movement" inside. He knocked again and identified himself. He continued to hear movement from within the house. Cubillos continued to knock and identify himself for approximately seven more minutes. Finally, [Mr.] Jackson opened the door. Due to [Mr.] Jackson's delay in answering the door, the officers decided to search the residence.

United States v. Jackson, 334 Fed. Appx. 900, 902 (record citation omitted) (10th Cir. June 24, 2009) (this court's affirmance of his conviction on direct appeal).

During the search, the officers discovered obvious drug paraphernalia, photographs of Mr. Jackson and mail addressed to him at 208 South Douglas, as

well as 7.9 grams of crack cocaine and a box of ammunition. Additionally, an officer noticed that the ceiling door to the attic was awry, and he therefore pushed open the door and looked in the attic. He discovered a total of 206.8 grams of crack cocaine in the attic.

Several days later, an acquaintance of Mr. Jackson's (and a potential witness on behalf of Mr. Jackson), Joseph Armstrong, signed an affidavit prepared by Mr. Jackson's attorney at the time, stating that the cocaine found at 208 South Douglas was his, not Mr. Jackson's, and that he stayed at the 208 South Douglas residence on "many occasions." See id. at 903 (record citation omitted).

Some three months later, agents from the Drug Enforcement Administration ("DEA"), as well as state drug task force officers, interviewed Mr. Armstrong, who initially claimed the cocaine found at the 208 South Douglas residence was his, not Mr. Jackson's. He subsequently recanted, saying that the cocaine did not belong to him, and that he was only trying to help Mr. Jackson. Mr. Armstrong further said that he had been friends with Mr. Jackson for a long time and considered him to be family. Mr. Armstrong also stated that he had not been promised anything specific for claiming the cocaine belonged to him, but that he believed that Mr. Jackson would "take care of him." See id. (record citation omitted). When asked what he would say if under oath, Mr. Armstrong admitted he would say the cocaine did not belong to him.

Two months later, Mr. Armstrong again changed his story. In a videotaped statement taken in the office of Mr. Jackson's then-attorney, but not under oath or subject to cross-examination, Mr. Armstrong claimed that the cocaine found inside the 208 South Douglas residence actually belonged to him. He further stated that the residence was owned by Mr. Jackson's grandmother, but he (Mr. Armstrong) had been living there for five or six years with the permission of Mr. Jackson's sister. He said he did not know who was responsible for the cocaine. He also said he was distantly related to Mr. Jackson and that "they were close." Id.

When Mr. Armstrong was asked it he knew that both crack and powder cocaine had been found at the 208 residence, he said that there was "hard and cut up cocaine." Id. (record citation omitted). He further stated that, based on statements made to him by the government agents who initially interviewed him, he thought he was going to be arrested. Mr. Armstrong also said that he was not forced or threatened to make the videotaped statement in which he claimed ownership of the cocaine and he said he would be willing to testify at trial.

Prior to his trial, Mr. Jackson filed a notice of intent to use Mr. Armstrong's affidavit and videotaped statements at trial, pursuant to the hearsay exceptions set forth in Fed. Rules of Evid. 804(b)(3) and 807. The government opposed the introduction of the statements. The district court ruled that the statements were inadmissable hearsay and did not satisfy the requirements for

admission under either Rule 804(b)(3) or Rule 807, because Mr. Jackson had failed to provide sufficient corroboration of their trustworthiness. The court also ruled that Mr. Armstrong's statements did not necessarily exculpate Mr. Jackson, because even if Mr. Armstrong owned the cocaine, Mr. Jackson could have knowingly possessed it.

Mr. Jackson then subpoenaed Mr. Armstrong to testify at Mr. Jackson's trial. Before the trial started, Mr. Armstrong's attorney informed the court that Mr. Armstrong would be invoking his Fifth Amendment right to remain silent. Mr. Jackson objected, arguing that Mr. Armstrong did not have the right to invoke the Fifth Amendment privilege because he had already inculpated himself in the affidavit and the videotape.

The court then placed Mr. Armstrong under oath and advised him of his right to remain silent and elicited the admission from Mr. Armstrong that he understood his Fifth Amendment right and had discussed it with his attorney. Mr. Jackson objected, arguing that the court's dialogue with Mr. Armstrong, as well as certain statements made by the drug agents that Mr. Armstrong would be arrested if he did not tell the truth, were coercive and interfered with Mr. Armstrong's right to decide whether to testify or not. The court then explicitly stated that it had no intent to influence Mr. Armstrong's decision whether to testify.

When asked whether he would testify at Mr. Armstrong's trial, Mr. Armstrong stated he would invoke his right to remain silent. When Mr. Jackson renewed his request to submit as evidence Mr. Armstrong's affidavit and videotaped statement, the court denied his request.

Mr. Jackson was subsequently convicted by a jury of one count of possession with intent to distribute cocaine base and aiding and abetting. He was sentenced, pursuant to 21 U.S.C. § 851, to a mandatory sentence of life imprisonment, because he had three prior state felony drug convictions. This was to be followed by ten years of supervised release. As indicated above, our court affirmed his conviction on direct appeal. See Jackson, 334 Fed. Appx. 900 (10th Cir. June 24, 2009). On appeal, Mr. Jackson argued that the district court had infringed upon his right to present a defense by permitting Mr. Armstrong to invoke his Fifth Amendment privilege, and that error was compounded by the court's refusal to admit Mr. Armstrong's out-of-court statement exculpating Mr. Jackson.

After his direct appeal, in 2010, Mr. Jackson filed the instant 28 U.S.C. § 2255 motion, alleging five claims of ineffective assistance of both trial and appellate counsel, as well as two claims relating to his sentence.[1] The matter was

_____

[1]Prior to the instant 28 U.S.C. § 2255 motion, Mr. Jackson filed a petition seeking habeas relief under 28 U.S.C. § 2241. In that petition, filed in the district court for the Eastern District of Kentucky, he claimed that his life sentence violated the Eighth Amendment because it was "grossly excessive" and because it
(continued...)

referred to a magistrate judge, who subsequently issued a 26-page proposed findings and recommended disposition, finding that an evidentiary hearing was unnecessary, and concluding that Mr. Jackson's claims were without merit.

More specifically, the magistrate judge held that the two sentencing issues were identical to the claims he raised in his § 2241 petition. Because they were not dismissed on their merits, the judge concluded the instant § 2255 petition was not second or successive.

With respect to Mr. Jackson's claim that he is "actually innocent" of the crime, so that the failure to allow him to present his defense was a complete miscarriage of justice, the magistrate judge declared that such a freestanding claim is not, in our circuit, a proper basis for habeas relief. See Lafevers v. Gibson, 238 F.3d 1263, 1265 n.4 (10th Cir. 2001) (holding that "an assertion of actual innocence, although operating as a potential pathway for reaching otherwise defaulted constitutional claims, does not, standing alone, support the granting of the writ of habeas corpus").

With respect to his claim that his counsel was ineffective on appeal because he failed to challenge the district court's denial of his motion for acquittal, the

_____

[1](...continued)
was based on now-disavowed higher penalties for crack cocaine than for powder cocaine. The district court dismissed the case, stating that "Jackson has not demonstrated that his available remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge his federal conviction and sentence." Jackson v. Wilson, 2010 WL 1038070, at *1 (E.D. Ky. March 17, 2010).

-7-

magistrate judge gave Mr. Jackson the benefit of the doubt and construed his petition as "raising claims of constitutional dimension based on an impermissible interference with presentation of the defense, sufficiency of the evidence, and [appellate counsel's] alleged failure to raise a sufficiency of the evidence claim on appeal." Proposed Findings & Rec. Disposition at 13, R. Vol. 1 at 120. After noting that "actual innocence" and "complete miscarriage of justice" are typically associated with a procedural bar, the magistrate judge went on to analyze the petition "based on the assumption that Petitioner wants to counter any possible default issue on ineffectiveness and/or innocence/justice grounds." Id. at 14, R. Vol. 1 at 121.

The magistrate judge then examined the petition on the merits, determining whether appellate counsel was ineffective under Strickland v. Washington, 466 U.S. 668 (1984). After concluding that our court on direct appeal had decided the merits of all the issues underling the ineffectiveness claims, the magistrate judge determined as follows:

> In light of the Tenth Circuit's rulings, the issues of agent coercion, presentation of the defense and sufficiency of the evidence are not subject to relitigation in this § 2255 matter. Those rulings, particularly the sufficiency ruling, are also dispositive of the ineffectiveness inquiry. Whether or not [appellate counsel] briefed the issue of sufficiency on appeal is of no consequence, . . . because the issue was in fact decided. Thus, there can be no deficient conduct or prejudice from [the claim] where Petitioner asserts [appellate counsel] was ineffective for failing to challenge [the trial court's] denial of judgment of acquittal on the basis that there was a "complete lack of evidence."

Proposed Findings & Rec. Disposition at 19, R. Vol. 1 at 126. Finally, the magistrate judge examined Mr. Jackson's other ineffectiveness claims, finding they were meritless because they seek to relitigate issues already decided, and those issues disposed of the Strickland claims.

Out of an admirable abundance of caution, the magistrate judge also determined there was an alternative ground for denying Mr. Jackson's ineffectiveness claims. This was because they were all premised on the erroneous assumption that the jury should have heard the claimed evidence that Mr. Armstrong owned the drugs, despite any other interests like the Fifth Amendment privilege, and/or that counsel should have done something more to demonstrate the trustworthiness of that evidence. Those issues were not subject to relitigation now, since our court on direct appeal had essentially found that any error regarding the sufficiency of the evidence was harmless.

Finally, turning to the sentencing issues raised by Mr. Jackson, the magistrate determined they were meritless.

The district court adopted the magistrate's report and recommendation in full and dismissed Mr. Jackson's petition and denied a COA. This request for a COA followed.

**DISCUSSION**

Pursuant to 28 U.S.C. § 2253(c)(2), a prisoner seeking a COA must make "a substantive showing of the denial of a constitutional right." Miller-El v.

<u>Cockrell</u>, 537 U.S. 322, 336 (2003). He may do so by "showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Thus, when the district court has ruled on the merits of the prisoner's claims, he must show that "reasonable jurists could find the district court's assessment of the constitutional claims debatable or wrong." <u>Id.</u> Where the district court ruled on procedural grounds, a COA may be granted when the petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and . . . whether the district court was correct in its procedural ruling." <u>Id.</u>

As indicated from the description above, the magistrate judge's lengthy decision, as adopted by the district court, was thorough and precise. We cannot improve on its analysis. Accordingly, for substantially the reason set forth in that decision, we agree that a COA should not issue and this matter should be dismissed.

## CONCLUSION

For the foregoing reasons, we DENY a COA and DISMISS this matter.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge