**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 11, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

SITAMIPA TOKI,

     Defendant - Appellant.

_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

ERIC KAMAHELE,

     Defendant - Appellant.

_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

KEPA MAUMAU,

     Defendant - Appellant.

No. 17-4153
(D.C. Nos. 2:16-CV-00730-TC &
2:08-CR-00758-TC-14)
(D. Utah)

No. 17-4154
(D.C. Nos. 2:15-CV-00506-TC &
2:08-CR-00758-TC-1)
(D. Utah)

No. 17-4155
(D.C. Nos. 2:15-CV-00600-TC &
2:08-CR-00758-TC-11)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **HOLMES**, and **McHUGH**, Circuit Judges.
_____

These appeals involve a consolidated motion under 28 U.S.C. § 2255 filed by Sitamipa Toki, Eric Kamahele, and Daniel Maumau. Toki, Kamahele, and Maumau committed a series of armed robberies as members of the Tongan Crip Gang. They were tried and convicted of various crimes, including assault with a dangerous weapon in aid of racketeering under the Violent Crimes in Aid of Racketeering Statute ("VICAR"), 18 U.S.C. § 1959; using or carrying a firearm during a crime of violence under 18 U.S.C. § 924(c); Hobbs Act robbery, 18 U.S.C. § 1951; and conspiracy to engage in racketeering.

Toki, Kamahele, and Maumau filed § 2255 motions challenging their convictions, which the district court denied. The court granted a certificate of appealability ("COA") as to two of Kamahele's claims. We granted a COA with respect to two additional issues. Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2255(d), we affirm on the four issues for which a COA has been granted. With respect to the remaining issues that petitioners raise, we deny a COA and dismiss the appeals.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

In 2011, Toki, Kamahele, and Maumau were tried in connection with several armed robberies they committed as members of the Tongan Crip Gang.  About a month before trial, Kamahele entered a guilty plea.  The next day, he told his counsel he wished to withdraw his plea.  Counsel filed a motion with the court, and the court held a hearing at which Kamahele withdrew his plea.

Petitioners were charged under VICAR, which makes it a federal crime to commit certain state crimes in aid of racketeering.  § 1959.  All three petitioners were convicted under VICAR of one count of Utah assault with a dangerous weapon.  Maumau was also convicted under VICAR of two counts of Arizona assault with a dangerous weapon.  Each VICAR conviction was the basis for a separate conviction under § 924(c) for using or carrying a firearm during a crime of violence.  In addition, Kamahele and Maumau were convicted of Hobbs Act robbery.  These Hobbs Act robbery convictions were the basis for separate § 924(c) convictions.  The two were also convicted of conspiracy to engage in racketeering.  Toki was ultimately sentenced to six years' imprisonment, Kamahele to thirty years, and Maumau to 55 years.  These sentences were based on the mandatory minimums required under § 924(c).  We affirmed their convictions and sentences on direct appeal.  United States v. Kamahele, 748 F.3d 984 (10th Cir. 2014).

In 2015, Kamahele filed a pro se § 2255 motion.  The district court denied the motion but granted a COA as to two of his claims relating to the withdrawal of his guilty plea.  Kamahele appeals these claims.  Maumau filed a pro se § 2255 motion

3

bringing eleven ineffective assistance of counsel claims. The district court denied the motion and did not grant a COA. Maumau now seeks a COA from this court on four of these claims.

Toki, Kamahele, and Maumau were appointed counsel, and they filed § 2255 motions with the aid of counsel. First, they argued under Johnson v. United States, 135 S. Ct. 2551 (2015), that their convictions under § 924(c) violated due process because § 924(c)(3)(B) is unconstitutionally vague. Determining that this claim was untimely, the district court denied the claim and denied a COA. Petitioners also argued they were "actually innocent" of their VICAR and § 924(c) convictions because the predicate crimes on which those convictions were based are not crimes of violence. The district court denied this claim and did not grant a COA.

In 2017, petitioners filed these timely appeals. We granted a COA on the following issues:

> (1) Whether a challenge to a conviction based on the residual clause of § 924(c) is timely under 28 U.S.C. § 2255(f)(3) if it is filed within a year of Johnson.

> (2) Whether Appellants' VICAR convictions based on Utah and Arizona aggravated assault are not categorically crimes of violence under the force clause of § 924(c) because they do not require the intentional use of violent force.

At oral argument, counsel for petitioners conceded the second issue.

## II

"On appeal from the denial of a § 2255 motion, ordinarily we review the district court's findings of fact for clear error and its conclusions of law de

4

novo." United States v. Barrett, 797 F.3d 1207, 1213 (10th Cir. 2015) (quotation omitted).

Petitioners contend that their § 924(c) convictions are unconstitutional under Johnson. In that case, the Supreme Court evaluated the constitutionality of the definition of "violent felony" in the Armed Career Criminal Act. It held that 18 U.S.C. § 924(e)(2)(B)(ii), known as the "residual clause," was unconstitutionally vague. 135 S. Ct. at 2560. As a result, it struck down enhancements for which the predicate crime was a "violent felony" under the residual clause and did not fall within § 924(e)(2)(B)(i), the "elements clause." Johnson did not address convictions under § 924(c).

The Court addressed § 924(c) in United States v. Davis, 139 S. Ct. 2319 (2019). Section 924(c) makes it a crime to use or carry a firearm "during and in relation to any crime of violence or drug trafficking crime" or to possess a firearm "in furtherance of any such crime." § 924(c)(1)(A). It defines a "crime of violence" as

> an offense that is a felony and—
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

§ 924(c)(3). Like § 924(e)(2)(B), § 924(c)(3) includes an "elements" clause (also called the "force" clause)—§ 924(c)(3)(A)—and a "residual" clause—§ 924(c)(3)(B).

5

In Davis, the Court held that the residual clause of § 924(c) is unconstitutionally vague. 139 S. Ct. at 2336.

The district court dismissed petitioners' challenges to their § 924(c) convictions as untimely. Petitioners argue that their claims are timely because they were filed within a year of Johnson. See § 2255(f)(3) (if right "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," claim must be filed within one year of "the date on which the right asserted was initially recognized by the Supreme Court"). In its briefing, the government argued that the claims are untimely because they were filed before Davis. See United States v. Bowen, 936 F.3d 1091, 1100 (10th Cir. 2019) (Davis announced new rule retroactively applicable on collateral review). But at oral argument, the government asked us to waive the timeliness issue and proceed to the merits of the claim. We have done so on other occasions in which we considered a petition challenging a conviction under § 924(c) that was filed within a year of Johnson. See, e.g., United States v. Clark, No. 18-2048, 2020 WL 3124450, at *2 n.1 (10th Cir. June 12, 2020) (unpublished); United States v. Moore, 802 F. App'x 338, 341 & n.2 (10th Cir. 2020) (unpublished); United States v. Morgan, 775 F. App'x 456, 457 (10th Cir. 2019) (unpublished); United States v. Ryle, 778 F. App'x 598, 600 (10th Cir. 2019) (unpublished). Because of the government's waiver, we adopt the same approach in this case. We assume petitioners' challenges to their § 924(c) convictions are timely and proceed to the merits.

6

Petitioners argue that their § 924(c) convictions are unconstitutional because the crimes on which they are predicated—VICAR and Hobbs Act robbery—are not categorically crimes of violence. We granted a COA on whether petitioners' VICAR convictions based on Utah and Arizona aggravated assault are categorically crimes of violence, but counsel for petitioners conceded this issue at oral argument. Because of this concession, we affirm the district court's denial of petitioners' challenges to their § 924(c) convictions for which the predicate crime of violence was a conviction under VICAR.

Turning to Kamahele and Maumau's § 924(c) convictions predicated on Hobbs Act robbery, we note that neither we nor the district court granted a COA on whether Hobbs Act robbery is a crime of violence. A petitioner may not appeal the denial of habeas relief under § 2255 without a COA. 28 U.S.C. § 2253(c)(1). We may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To make this showing, a petitioner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quotations omitted).

In United States v. Melgar-Cabrera, 892 F.3d 1053 (10th Cir. 2018), we held that Hobbs Act robbery is a crime of violence under the force clause of § 924(c).[1]

---

[1] Our sibling circuits that have considered the issue are in agreement. See United States v. Dominguez, 954 F.3d 1251, 1260 (9th Cir. 2020) (collecting cases).

Kamahele and Maumau argue we should hold that Hobbs Act robbery is not a crime of violence, relying on United States v. Dubarry, 741 F. App'x 568 (10th Cir.) (unpublished), cert. denied, 139 S. Ct. 577 (2018). In that case, we acknowledged that Melgar-Cabrera did not address the argument that Hobbs Act robbery is not a crime of violence because it can be accomplished by threatening injury to intangible property. Id. at 570. But in Melgar-Cabrera, we categorically held that Hobbs Act robbery is a crime of violence based on the elements of the offense. Id. at 1061-66. "[W]e are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court." Strauss v. Angie's List, Inc., 951 F.3d 1263, 1269 (10th Cir. 2020) (quotation omitted). We conclude that under our binding precedent in Melgar-Cabrera, the constitutionality of Kamahele and Maumau's § 924(c) convictions predicated on Hobbs Act robbery is not reasonably debatable. Accordingly, we do not grant a COA as to these convictions.

## III

We turn to petitioners' actual innocence claims. Petitioners contend that they are actually innocent of their convictions under § 924(c) and VICAR. The district court denied their claims and did not grant a COA, and we also have not granted a COA on this issue. Because petitioners have renewed their request for a COA on these claims, our inquiry is whether they have shown "that reasonable jurists could debate" whether they are entitled to relief. Slack, 529 U.S. at 484.

Petitioners argue that they are actually innocent of their § 924(c) convictions because the corresponding VICAR and Hobbs Act robbery predicates are not

8

categorically crimes of violence. But as explained above, counsel for petitioners conceded at oral argument that petitioners' VICAR convictions were categorically crimes of violence, and Hobbs Act robbery is categorically a crime of violence under our binding precedent. Because petitioners advance no other argument in support of their actual innocence claims with respect to their § 924(c) convictions, we do not grant a COA on these claims.[2]

With respect to their VICAR convictions, petitioners argue that they are actually innocent because their crimes do not satisfy the elements of VICAR. This is a "freestanding" actual innocence claim: unlike a "gateway" actual innocence claim "enabl[ing] habeas petitioners to overcome a procedural bar in order to assert distinct claims for constitutional violations[,] . . . a freestanding claim asserts actual innocence as a basis for habeas relief." Farrar v. Raemisch, 924 F.3d 1126, 1130-31 (10th Cir. 2019) (quotation omitted). In Herrera v. Collins, 506 U.S. 390 (1993), the

_____

[2] We need not address whether petitioners' claims of actual innocence would be viable if the predicate crimes for their § 924(c) convictions were not crimes of violence. See Bowen, 936 F.3d at 1097 n.2 ("[N]either our circuit nor the Supreme Court has definitively resolved whether a claim of actual innocence based on a new statutory interpretation—rather than such a claim based on new evidence—can overcome § 2255's statute of limitations."). We note that the Fifth Circuit and scholars have suggested that such a claim of actual innocence may be viable. See United States v. Reece, 938 F.3d 630, 634 n.3 (5th Cir. 2019), as revised (Sept. 30, 2019) ("If [the petitioner]'s convictions were based on the definition of [crime of violence] articulated in § 924(c)(3)(B), then he would be actually innocent of those charges under Davis."); Leah M. Litman, Legal Innocence and Federal Habeas, 104 Va. L. Rev. 417, 469 (2018) ("Bousley[ v. United States, 523 U.S. 614 (1998),] . . . recognized that legal innocence, if the defendant's conduct did not fall within the scope of the relevant criminal statute, would constitute cause for procedural default.").

Supreme Court held that "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Id. at 404; see also LaFevers v. Gibson, 238 F.3d 1263, 1265 n.4 (10th Cir. 2001) ("[A]n assertion of actual innocence, although operating as a potential pathway for reaching otherwise defaulted constitutional claims, does not, standing alone, support the granting of the writ of habeas corpus.").

In McQuiggin v. Perkins, 569 U.S. 383 (2013), the Court stated that it had "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." Id. at 392; see also Case v. Hatch, 731 F.3d 1015, 1036 (10th Cir. 2013) ("[I]n Herrera, the Court refused to endorse [a freestanding actual innocence] habeas claim, and, as yet, it is an open question whether such a federal right exists."). But even after McQuiggin, we have consistently denied freestanding actual innocence claims. See, e.g., Farrar, 924 F.3d at 1131 ("[A]ctual innocence does not constitute a freestanding basis for habeas relief."); Vreeland v. Zupan, 906 F.3d 866, 883 n.6 (10th Cir. 2018), cert. denied, 139 S. Ct. 1586 (2019) (actual innocence does not support granting habeas relief (citing LaFevers, 238 F.3d at 1265 n.4)). Accordingly, we decline to grant a COA on petitioners' freestanding actual innocence challenges to their VICAR convictions.

## IV

We turn to Kamahele's claims related to the withdrawal of his guilty plea, for which the district court granted a COA. Kamahele alleges that the day after his plea

10

hearing, he changed his mind about pleading guilty because his codefendant asked him to withdraw his guilty plea. He tried to contact his attorney and asked his attorney's secretary to convey to her that he wished to withdraw his plea. He alleges that his attorney did not contact him. Instead, she filed a motion representing that Kamahele wished to withdraw the plea but had not informed her of his reasons for the withdrawal. She requested an expedited hearing because trial was less than a month away. The court held a hearing the next day.

Kamahele represents that he did not speak to his attorney about the motion until the day of the hearing and that they spoke for only five minutes before the hearing. He states she told him he was "the dumbest person she had ever met" and that the judge would not grant his request. During the hearing, Kamahele's counsel indicated on the record that his decision to withdraw his plea was against her advice. The court then granted the motion to withdraw. Kamahele was tried, convicted, and ultimately sentenced to thirty years' imprisonment.

In his pro se § 2255 motion, Kamahele brought two claims that are at issue in this appeal: (1) ineffective assistance of counsel in connection with the withdrawal of his guilty plea and (2) denial of due process by the district court, which granted the motion to withdraw. The district court denied the claims but granted a COA.

**A**

Kamahele argues his ineffective assistance of counsel claim should be remanded for discovery and an evidentiary hearing. Section 2255(b) provides, "[u]nless the [§ 2255] motion and the files and records of the case conclusively show

11

that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." § 2255(b). Our review of this issue entails a two-step inquiry: "(1) whether the defendant is entitled to relief if his allegations are proved; and (2) whether the district court abused its discretion by refusing to grant an evidentiary hearing." United States v. Whalen, 976 F.2d 1346, 1348 (10th Cir. 1992).

With respect to the first step, Kamahele argues that his counsel's assistance was ineffective in connection with the withdrawal of his plea. In general, "a defendant has no right to be offered a plea, nor a federal right that the judge accept it." Missouri v. Frye, 566 U.S. 134, 148 (2012) (citation omitted). But "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." Lafler v. Cooper, 566 U.S. 156, 168 (2012). This case concerns counsel's advice in connection with withdrawing a guilty plea (as opposed to entering one). Regardless, we evaluate counsel's conduct under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). A petitioner claiming ineffective assistance of counsel must show his or her attorney's representation "fell below an objective standard of reasonableness." Id. at 688. In evaluating such a claim, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The petitioner must also affirmatively prove that he or she was prejudiced by the allegedly deficient representation, meaning "there is a reasonable probability that, but

12

for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Kamahele alleges his attorney did not ensure he understood the consequences of withdrawing his plea, particularly the mandatory minimum sentence he would face if convicted. He alleges that counsel made no attempt to contact him after learning he wished to withdraw his plea; instead, she merely talked to him for five minutes before the hearing and told him he was "the dumbest person she had ever met." We need not decide, however, whether counsel's performance was deficient because Kamahele has not shown he was prejudiced by it.

To prove prejudice "[i]n the context of pleas[,] a defendant must show the outcome of the plea process would have been different with competent advice." Lafler, 566 U.S. at 163; see also Frye, 566 U.S. at 147 ("[I]t is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable."); United States v. Hamilton, 510 F.3d 1209, 1216 n.3 (10th Cir. 2007) (for defendant alleging counsel ineffectively advised him to plead guilty, "the proper inquiry is whether the defendant has shown that, but for his counsel's conduct, he would not have pleaded guilty."). In this case, Kamahele pled guilty pursuant to an agreement that his sentence would be twelve years' imprisonment, but after withdrawing his plea, he was ultimately sentenced to thirty years' imprisonment. In order to show prejudice, Kamahele must show there was a reasonable probability that he would not have withdrawn his plea had counsel effectively advised him.

Based on the allegations in his pro se § 2255 motion, Kamahele cannot make

13

this showing. Kamahele argued that he was prejudiced because he lost "an opportunity to take a more favorable sentence"—the twelve-year sentence to which he had already pled guilty. But critically, he does not allege that had he received effective assistance of counsel, he would have decided not to withdraw his plea. Rather, he argues that counsel should not have submitted his motion to withdraw "[r]egardless of [his] wishes." Similarly, Kamahele asserts that he did not "fully grasp[] the concept of federal mandatory minimum sentences" and that counsel gave him different calculations of the amount of prison time he faced. But he does not allege that had he understood that the minimum sentence for two § 924(c) convictions was thirty years, he would not have withdrawn his plea.

We acknowledge that Kamahele filed his initial § 2255 motion pro se, and though we liberally construe his pleadings, we "do not assume the role of advocate," Yang v. Archuleta, 525 F.3d 925, 927 n.1 (10th Cir. 2008) (quotation omitted). Absent any allegations or evidence in the § 2255 motion that could lead to an inference that Kamahele would not have withdrawn his plea but for counsel's performance, we conclude that he cannot show prejudice. On this basis, we affirm the district court's denial of Kamahele's ineffective assistance of counsel claim. We need not reach the question "whether the district court abused its discretion by refusing to grant an evidentiary hearing." Whalen, 976 F.2d at 1348.

**B**

As for Kamahele's due process claim, the district court concluded the claim is procedurally barred because it was not raised on direct appeal. We agree. "A § 2255

motion is not available to test the legality of a matter which should have been raised on direct appeal." United States v. Cox, 83 F.3d 336, 341 (10th Cir. 1996). A petitioner cannot raise a procedurally defaulted claim "unless he establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered." Id.

Kamahele did not argue cause and prejudice below or in his opening brief. He does so for the first time in his reply brief, contending the procedural default should be excused because it was caused by ineffective assistance of counsel. We decline to consider this argument. See Gutierrez v. Cobos, 841 F.3d 895, 902 (10th Cir. 2016) ("[A] party waives issues and arguments raised for the first time in a reply brief." (quotation omitted)).

As for the fundamental miscarriage of justice exception, we have explained that it applies only when a petitioner has made "a colorable showing of factual innocence." Cox, 83 F.3d at 341 (citing Sawyer v. Whitley, 505 U.S. 333, 339-40 (1992)).[3] The Supreme Court has repeatedly "emphasized the narrow scope" of the exception. Sawyer, 505 U.S. at 340. Kamahele did not argue below, and he does not argue on appeal, that he is factually innocent. Accordingly, the fundamental miscarriage of justice exception does not apply. We affirm the denial of Kamahele's due process claim.

---

[3] The district court assumed without deciding that the exception applied.

**V**

Finally, we turn to Maumau's ineffective assistance of counsel claims, for which he seeks a COA. The district court denied all eleven of Maumau's claims and did not grant a COA. Maumau now seeks a COA on claims 4 through 6 and 11, which relate to his VICAR convictions.[4] Maumau does not dispute his membership in the Tongan Crip Gang, but argues that but for his attorney's alleged errors, the jury could have found that some of his robberies were not motivated by his gang membership. We disagree.

In claims 4 and 5, Maumau challenges (1) his counsel's failure to interview the government's fact witness Edward Kamoto and (2) his counsel's allegedly ineffective cross-examination of Kamoto. At trial, Kamoto testified that Maumau had participated with him in two robberies and that they were members of the gang. Maumau alleges that before trial, Kamoto had denied any connection to the gang, and after trial, Kamoto stated in an affidavit that the robberies in which he participated were neither "committed on behalf of the Tongan Crip Gang" nor committed to elevate his standing in the gang. Maumau contends that had Kamoto testified the two had acted "without a gang-related purpose," Maumau could have avoided his VICAR and associated § 924(c) convictions.

---

[4] VICAR makes it a crime to commit certain enumerated offenses "as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity." § 1959(a).

16

The district court denied the claims, concluding the evidence on the VICAR convictions was "overwhelming" and that any favorable testimony Maumau suggests would have been elicited from Kamoto "is contradicted by Kamoto's own testimony" and "was actually brought out on the stand" anyway. Accordingly, it concluded Maumau failed to satisfy Strickland. And in its denial of a COA on the issue, it specifically stated that a jury could have found the requisite gang-related motive based on the "compelling testimony of Officer Break Merino."

On appeal, Maumau contends that Kamoto's affidavit "calls into question" his testimony about whether Maumau's conduct was intended to increase his standing in the gang. But he does not address any of the other evidence presented at trial— including Officer Merino's testimony—from which a jury could have inferred a gang-related motive. As a result, even assuming counsel's performance was deficient because she did not elicit contradictory testimony from Kamoto, Maumau has not established prejudice from this deficiency because he has not shown a reasonable probability that the jury would have reached a different result regarding his VICAR convictions. Because Maumau has not shown that reasonable jurists could debate whether he has established prejudice on claims 4 and 5, we do not grant a COA on these claims.

In claim 6, Maumau contends his counsel was ineffective because she did not adequately investigate the argument that his need to pay for college expenses was a non-gang motive for his participation in the robberies. In support, he cites receipts for his college expenses found in his car. The district court denied this claim, stating

17

it could not discern "any relevant link between the college receipts, Maumau's motive and intent, and the purpose of the robberies." On appeal, Maumau states that the jury could have inferred that his real motive for committing the robberies was to pay for college. But he does not raise any argument about the reasonableness of his counsel's performance.

As the Supreme Court explained in Strickland, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91. Maumau does not argue that his counsel's decision was not a reasonable strategic choice. Further, he does not contend that her choice prejudiced him. He is thus not entitled to a COA on claim 6.

In claim 11, Maumau argues the cumulative effect of his attorney's errors rendered her representation constitutionally ineffective. "[A] cumulative-error analysis aggregates only actual errors to determine their cumulative effect." United States v. Rivera, 900 F.2d 1462, 1470 (10th Cir. 1990) (emphasis added). In this case, "there is no holding of error, no error to cumulate, and no occasion to apply a cumulative-error analysis." Id. at 1472. We deny a COA as to this claim.

18

**VI**

For the foregoing reasons, we **AFFIRM** as to the issues for which a COA has been granted. With respect to the remaining issues, we **DENY** a COA and **DISMISS** the appeals.

Entered for the Court


Carlos F. Lucero
Circuit Judge

19