MURPHY, Circuit Judge.
I. INTRODUCTION
In Atkins v. Virginia, 536 U.S. 304, 321, 122 S.Ct. 2242,153 L.Ed.2d 335 (2002), the Supreme Court held that the Eighth Amendment precludes the execution of mentally retarded criminals. Relying on Atkins, the Oklahoma Court of Criminal Appeals (“OCCA”) granted George Ochoa, a convicted murderer under sentence of death, a post-conviction jury trial to determine whether he was mentally retarded. The jury found Ochoa failed to meet his burden of proving, by a preponderance of the evidence, he was mentally retarded. The OCCA affirmed. Ochoa v. State, 136 P.3d 661, 670 (Okla.Crim.App.2006). This court granted Ochoa permission to file a second 28 U.S.C. § 2254 petition raising his Atkins claims in federal district court. Ochoa v. Sirmons, 485 F.3d 538, 546 (10th Cir.2007). After the district court denied Ochoa’s second § 2254 habeas petition on the merits, Ochoa filed the instant appeal.
Ochoa’s appeal implicates the intersection of Atkins and the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996) (“AEDPA”). Ochoa contends Oklahoma law, which focuses on whether a defendant is mentally retarded at the time of trial, instead of whether he was mentally retarded at the time of the commission of the crime, is “contrary to, or ... an unreasonable application of’ Atkins. 28 U.S.C. § 2254(d)(1). We reject this contention. Oklahoma’s determination that mental retardation is not a fluid concept is entirely consistent with Atkins. Ochoa further asserts his trial was fundamentally unfair because (1) the jury was informed he had been convicted of a crime, (2) he was forced to attend trial in an orange prison jumpsuit, and (3) he was forced to wear a shock sleeve during trial. Despite Okla *1133 homa’s arguments to the contrary, this court concludes these claims are Atkins claims. Thus, the district court properly resolved them on the merits. 28 U.S.C. § 2244(b). We further hold the district court correctly concluded none of the alleged errors identified by Ochoa entitle him to habeas relief. Thus, exercising jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(c)(1)(A), this court affirms the order of the district court denying Ochoa’s § 2254 habeas petition.[1]
II. BACKGROUND
An Oklahoma state jury found Ochoa guilty of, inter alia, two counts of first degree murder and sentenced him to death. On direct appeal, the OCCA affirmed. Ochoa v. State, 963 P.2d 583, 606 (Okla.Crim.App.1998). After exhausting his state post-conviction remedies, Ochoa filed a 28 U.S.C. § 2254 petition in federal district court. The district court denied habeas relief in an extensive order. Ochoa appealed the district court’s denial of habeas relief to this court (No. 02-6032).
After briefing was complete and No. 02-6032 was set for oral argument, this court stayed the appeal, upon Ochoa’s motion, so he could exhaust an Atkins claim in state court. Oklahoma held a jury trial on Ochoa’s Atkins claim; the jury concluded Ochoa did not prove he was mentally retarded. The OCCA affirmed. Ochoa v. State, 136 P.3d 661, 670 (Okla.Crim.App. 2006). This court then granted Ochoa per *1134 mission to file a second § 2254 petition raising his Atkins claim in federal district court. Ochoa v. Sirmons, 485 F.3d 538, 539 (10th Cir.2007). After the district court denied habeas relief, Ochoa brought the instant appeal to this court (No. 10-6088).[2]
III. STANDARD OF REVIEW
Ochoa is entitled to federal habeas relief only if the OCCA’s resolution of his claims “was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or ... was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d). This court presumes a state court’s factual findings are correct unless the petitioner rebuts that presumption by “clear and convincing evidence.” Id. § 2254(e)(1).
We first determine whether the principle of federal law upon which Ochoa relies was “clearly established by the Supreme Court at the time of the state court judgment.” Bland v. Sirmons, 459 F.3d 999, 1009 (10th Cir.2006). Clearly established law consists of Supreme Court holdings in cases “where the facts are at least closely related or similar” to the facts in Ochoa’s case. House v. Hatch, 527 F.3d 1010, 1016 (10th Cir.2008). “The absence of clearly established federal law is dispositive under § 2254(d)(1).” Id. at 1018. If clearly established federal law exists, this court moves on to consider whether the OCCA decision was contrary to or an unreasonable application of that clearly established federal law.
A decision is “contrary to” clearly established federal law ... if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or if the state court confronts a set of facts ... materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from the result reached by the Supreme Court.
Bland, 459 F.3d at 1009 (quotations omitted). “A state court decision involves an ‘unreasonable application’ of federal law if the state court identifies the correct governing legal principle from Supreme Court decisions but unreasonably applies that principle to the facts of the prisoner’s case.” Id. (quotation omitted).
IV. ANALYSIS
A. Temporal Focus of Mental Retardation Determination
1. Background
At his mental retardation trial, Ochoa asked for a jury instruction focused on whether he was retarded at the time he committed the crimes. The trial court denied the request and instructed the jury to determine whether Ochoa was mentally retarded at the time of the trial. On direct appeal,[3] Ochoa asserted the trial court’s instruction was at odds with Atkins. The OCCA rejected Ochoa’s assertion of error, concluding:
Ochoa argues that the Supreme Court’s holding in Atkins prohibits the State from executing a person who was mentally retarded at the time the crimes were committed, not at the time of the *1135 jury trial on the issue of mental retardation. Evidence presented at Ochoa’s jury trial on mental retardation showed that Ochoa scored higher on intelligence tests given in 2008 than on those given to him in 1995 and 1996. Evidence also was presented which showed Ochoa had learned to read and write while incarcerated and suggested his ability to learn to read and write likely contributed to his more current test performance.
Counsel for Ochoa requested the trial court instruct the jury that it must find Ochoa was mentally retarded at the time of the offense and the trial court denied the requested instructions. Ochoa argues that the focus of the Court in Atkins was upon the moral culpability of the offender at the time of the crime and the relevant constitutional inquiry is not whether the offender is retarded at the moment, but rather whether the offender was retarded when the crime occurred. He asks this Court to vacate the jury’s verdict because it was rendered upon instructions which required it to find Ochoa was presently mentally retarded.
Although the Court in Atkins did not specifically define “mental retardation” for the individual States and left ... to the States “the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences,” there it referenced two generally accepted clinical definitions. Atkins, 536 U.S. at 317 n. 22 [122 S.Ct. 2242], Both definitions require mental retardation to be present before the age of eighteen (18). Id. at 308 n. 3 [122 S.Ct. 2242] (AAMR definition requires mental retardation to “manifest” before age eighteen; American Psychiatric Association’s definition states the “onset must occur before” eighteen (18)).
We disagree with Ochoa’s description of mental retardation as a “fluid concept.” While we do not dispute that a mentally retarded person can learn and develop skills, that ability is limited and the ability to learn and to adaptively function suggests the individual was likely not mentally retarded in the first place but fell into that borderline range or classification due to environmental or other factors which affected present ability. The witness at Ochoa’s trial acknowledged this when she testified that some people functioning at a low level due to environment, education or impoverishment could move “above the level” of mental retardation classification by increasing his or her abilities to function. That Ochoa may have had an IQ score within the range of 70 to 75 at the time of the crime is relevant but does not prove mental retardation. “I.Q. tests alone are not determinative of the issue of mental retardation.” Myers, 130 P.3d at 268.
The requisite cognitive and behavioral impairments attendant to mental retardation, as defined by this Court in evaluating Eighth Amendment claims, substantially limits one’s ability to understand and process information, to communicate, to learn from experience or mistakes, to engage in logical reasoning, to control impulses, and to understand the reactions of others. We do not dispute that a mentally retarded person can learn. However, a person who can learn beyond the accepted clinical definitions of mental retardation does not fall within the definition of those persons who may avoid execution due to mental retardation. The evidence presented at Ochoa’s mental retardation jury trial showed he does not function at a significantly sub-average intellectual level that substantially limits his ability to understand and process information, to communicate, to learn from his mistakes, to engage in logical reasoning, to control impulses, and to understand the reaction of others. The *1136 jury was properly instructed it must find Ochoa “is” mentally retarded, as opposed to finding he “was” mentally retarded at the time of the crime.
Ochoa, 136 P.3d at 665-66.
2. Discussion
Ochoa contends the OCCA’s decision to adopt a definition of mental retardation in which the disability is static is “contrary to, or an unreasonable application of,” Atkins. 28 U.S.C. § 2254(d)(1). According to Ochoa, the Supreme Court’s focus in Atkins was upon the moral culpability of the offender at the time of his commission of the crime. In support of this contention, Ochoa cites the following language from Atkins: “Because of their disabilities in the areas of reasoning, judgment, and control of their impulses, ... [the mentally retarded] do not act with the level of moral culpability that characterizes the most serious adult criminal conduct.” 536 U.S. at 306, 122 S.Ct. 2242 (emphasis added).[4] In essence, Ochoa asserts Atkins requires that Oklahoma adopt a fluid definition of mental retardation, i.e., a definition specifically contemplating the possibility an individual may outgrow his mental retardation.[5] Because the jury at his mental retardation trial was instructed to determine whether Ochoa was mentally retarded at the time of the trial, rather than at the time of the murders, Ochoa asserts Oklahoma’s resolution of his mental retardation claim was contrary to, or an unreasonable application of, Atkins.
Atkins concluded “a national consensus has developed against” the execution of the mentally retarded. 536 U.S. at 316, 122 S.Ct. 2242. In so concluding, however, the Court explicitly recognized that no such consensus existed as to the exact parameters of the term “mentally retarded”:
To the extent there is serious disagreement about the execution of mentally retarded offenders, it is in determining which offenders are in fact retarded.... Not all people who claim to be mentally retarded will be so impaired as to fall within the range of mentally retarded offenders about whom there is a national consensus. As was our approach in Ford v. Wainwright, 477 U.S. 399 [106 S.Ct. *1137 2595, 91 L.Ed.2d 335] (1986), with regard to insanity, “we leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences.” Id. at 405, 416-417 [106 S.Ct. 2595].
Id. at 317, 122 S.Ct. 2242. Furthermore, the Court recently reiterated that Atkins specifically avoided establishing “substantive guides for determining when a person who claims mental retardation will be so impaired as to fall [within Atkins’ compass],” instead leaving that task to the states in the first instance. Bobby v. Bies, 556 U.S. 825, 129 S.Ct. 2145, 2150, 173 L.Ed.2d 1173 (2009) (alteration in original) (quotation omitted); see also Hill v. Humphrey, 662 F.3d 1335, 1351-52 (11th Cir. 2011) (en banc) (“Atkins did not bestow a substantive Eighth Amendment right to a fixed and rigid definition of ‘mentally retarded persons.’ Indeed, various states use different definitions of intellectual functioning (some draw the line at an IQ of 75 or below, some at 70 or below, others at 65 or below) and consider different factors in assessing adaptive functioning.” (footnote omitted)). This court can say with certainty that Atkins did not address “the time frame, if any, at which a finding of mental retardation is relevant, i.e., time of offense, time of trial, or time of execution.” Bowling v. Commonwealth, 163 S.W.3d 361, 369 (Ky.2005). This absolute absence of clearly established Supreme Court precedent dooms Ochoa’s claim. House, 527 F.3d at 1018 (“The absence of clearly established federal law is dispositive under § 2254(d)(1).”). Thus, the OCCA’s determination that mental retardation is a static condition — and that those who at the time of the mental retardation trial are not mentally retarded, never were mentally retarded — is neither contrary to, nor an unreasonable application of, Atkins’ prohibition on the execution of the mentally retarded. See Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 169 L.Ed.2d 583 (2008) (concluding that because no decision of the Court “squarely addresse[d]” the issue presented and because none of the Court’s cases gave a “clear answer to the question presented,” the federal habeas court could not find the state court unreasonably applied clearly established law).
Furthermore, Ochoa does not cite a single authority for the proposition that mental retardation is a fluid concept.[6] The *1138 Supreme Court, on the other hand, citing to scholarship in the field, has noted “[mjental retardation is a permanent, relatively static condition.” Heller v. Doe ex rel. Doe, 509 U.S. 312, 323, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). For this reason, the Kentucky Supreme Court concluded the question of temporal focus “is more semantical than real.” Bowling, 163 S.W.3d at 377 (citing Heller and the scholarship cited therein for the proposition that because mental retardation is a “permanent, relatively static condition,” it would be “exceedingly rare” for the condition to “recede during the interim between the offense and the execution”); see also State v. Arellano, 213 Ariz. 474, 143 P.3d 1015, 1020 (2006) (holding that because mental retardation is a static condition, “evidence of any skills or deficiencies in adaptive behavior exhibited by a defendant, even after age eighteen, helps determine whether a defendant has mental retardation”).
Ochoa has failed to carry his burden of demonstrating the definition of mental retardation adopted by the OCCA is “contrary to ... or an unreasonable application of ’Atkins. 28 U.S.C. § 2254(d)(1).
B. Fundamental Fairness of Ochoa’s Mental Retardation Trial
1. Background
On direct appeal from the jury’s determination he had not proven he was mentally retarded, Ochoa asserted three procedural irregularities rendered his trial unfair: (1) the jury learned of Ochoa’s prior conviction; (2) Ochoa went to trial wearing his orange prison jumpsuit; and (3) Ochoa was forced to wear a shock sleeve during the trial. The OCCA determined Ochoa was not entitled to relief:
Ochoa contends the trial was fundamentally unfair because the jury learned of [his] prior convictions and ... saw [him] wearing orange jail overalls and a “shock sleeve.” The record reflects Ochoa chose not to dress out; and, following counsel’s request that the trial court admonish him not to act inappropriately during the trial, Ochoa responded to the trial court’s admonishments with obvious upset. After the trial court advised Ochoa he would be removed from the court room if he were to be disruptive, Ochoa responded that he was “being railroaded anyway, so it didn’t matter to” him. At this point the trial court asked the deputy to put on “the sleeve,” noting that “it may ensure that he won’t behave inappropriately.” After the deputy left with Ochoa, the trial court stated, “I’ve observed them with that on. They don’t seem to be a problem.” When Ochoa returned to the court room, counsel said Ochoa wanted to make a record on “the sleeve.” The trial court asked, “he objects to it?” Upon counsel’s affirmative response, the trial court stated, “he was going to cause a problem, now he’s not.”
The potential jurors were called and the trial court informed the venire the case had “to do with a criminal matter that you will not hear about.” The trial court explained a deputy was present because Ochoa was
in custody. So he’s not free to leave.... So he’s accompanied by a *1139 deputy all the time because he’s in custody.
And he has been convicted of a crime that we’re not going to tell you about at this point in time, okay? ... [A]nd there’s very limited reasons why you might hear it during the trial, but probably not. But he’s been convicted of a crime.
After a potential juror indicated his best friend graduated from the police academy, the trial court stated, “I don’t see any law enforcement officers, but this is a criminal case, okay. Criminal cases are involved in this.” After a potential juror described being robbed at gunpoint and said this was not that kind of case, the trial court stated, “And that’s true, but it does have criminal overtones to it.” After voir dire, before court recessed for the day, the trial court noted the breaks were a little bit longer, because “Ochoa’s in custody and you’re eight floors away from the coffee shop.... ” During voir dire, the prosecutor also stated “You understand he’s already been convicted of a crime,” and reminded the jurors they were not going to find out what Ochoa was convicted of and might have “unanswered questions.” Ochoa contends the jury should not have received any information relating to his custodial status and he should not have been “forced” to proceed at trial in prisoner clothing and the shock sleeve. Ochoa relies upon Deck v. Missouri, 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005), and argues he was deprived of due process and a fundamentally fair trial when the jury observed him in obvious restraint without being told why he was in custody.
The jury’s knowledge that Ochoa was in custody, that he had previously been convicted, and that the proceeding was related to a criminal matter was not violative of Lambert v. State, 71 P.3d 30 (Okla.Crim.App.2003). While evidence relating to his criminal conviction and sentence of death are not relevant to the proceeding, the jury’s knowledge that the proceeding was related to a criminal matter and that Ochoa was in custody and had been convicted of a crime does not create the prejudicial effect Lambert sought to avoid.
It is error to compel an accused to appear before a jury in prison clothing where a timely request has been made for civilian clothing. However here, the record shows Ochoa’s decision to appear before the jury in jail dress was his own. He was compelled by no one but himself. We find no Fourteenth Amendment violation where Ochoa himself made the decision to appear in jail dress and no request for civilian clothing appears in the record. Estelle v. Williams, 425 U.S. 501, 512-513, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). .
Ochoa’s presence before the jury in the shock sleeve is a more .difficult matter.... The Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to a jury absent a trial court determination, in the exercise of its discretion, that the restraints are justified by a state interest specific to a particular trial. Deck, 544 U.S. at 629 [125 S.Ct. 2007]. The Supreme Court extended this legal principle beyond guilt/innocence proceedings and reversed a death sentence reached by a jury in a trial where a defendant was shackled with leg irons, handcuffs, and a belly chain during the penalty stage of trial. Id. at 2014....
While the use of shackles or other restraints is clearly not favored, the constitutional requirement against routine restraints is not absolute. Id. A judge, in the exercise of discretion and taking into account the special circumstances of each proceeding, including security con *1140 cerns, may call for shackling. Id. at 683 [125 S.Ct. 2007], “But given their prejudicial effect, due process does not permit the use of visible restraints if the trial court has not taken account of the circumstances of the particular case.” Id at 632 [125 S.Ct. 2007].
We agree ... it is the trial judge’s responsibility to control the decorum of the courtroom. However, this record does not sufficiently establish that Ochoa was in fact disruptive, violent or aggressive or that this level of control was needed. The trial court admitted its decision to put the shock sleeve on Ochoa was “like insurance” and was precautionary in nature. The trial court’s statement that Ochoa told someone he was going to be disruptive was not sufficient to warrant the action taken by the trial court and its order requiring Ochoa to wear the shock sleeve constituted an abuse of discretion....
The State argues the record does not show the shock sleeve was visible to the jury or that the jury knew what the shock sleeve was for, so even if the trial court should not have ordered Ochoa to wear it, no constitutional error resulted. In Phillips v. State, [989 P.2d 1017 (Okla.Crim.App.1999) ] where the parties agreed the stun belt was not visible to the jury and the defendant was not physically restrained and his mental abilities were not hampered, this Court found the defendant was not deprived of a fair trial....
Here the record does not show the shock sleeve was visible to the jury. Even if it were visible, we doubt the jury’s ability to see the shock sleeve was any more prejudicial to Ochoa than was the fact that the jury saw Ochoa wearing his jail clothing and Ochoa himself made the decision to dress out in jail clothing. Ochoa does not claim the shock sleeve prevented him from physically or mentally assisting his counsel at the mental retardation hearing. While this Court finds the trial court erred and abused its discretion by ordering Ochoa to wear the shock sleeve, Ochoa has not proven this error had a substantial influence on the outcome of the proceeding and has not shown prejudice. See e.g., U.S. v. McKissick, 204 F.3d 1282, 1299 (10th Cir.2000) (court will not presume prejudice where there was no evidence jurors noticed the stun belt).
Ochoa, 136 P.3d at 667-70 (citations omitted).
2. Discussion
a. 28 U.S.C. § 2244(b)(4)
i. Procedural Background
The filing of a second or successive § 2254 habeas petition, and the contents thereof, are tightly constrained by the provisions of the AEDPA. As relevant to the instant case, the AEDPA provides
A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless ... the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.
28 U.S.C. § 2244(b)(2)(A). A three-judge panel of this court concluded Ochoa made a prima facie showing that his application satisfied the requirements of § 2244(b)(2)(A) and, thus, authorized Ochoa to file “a second or successive habeas petition raising an Atkins challenge to his death sentence.” Ochoa, 485 F.3d at 546.[7] Upon the filing of Ochoa’s second or successive habeas petition in district court, *1141 Oklahoma sought dismissal of Ochoa’s claims of procedural irregularity on the ground those particular claims did not satisfy the standard set out in § 2244(b)(2)(A). See 28 U.S.C. § 2244(b)(4) (providing that “[a] district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless” the claim satisfies the requirements of § 2244(b)(2)).[8] In particular, Oklahoma asserted the claims must be dismissed because these claims are based on non-Atkins Supreme Court decisions and decisions of the OCCA. The district court refused to dismiss Ochoa’s claims of procedural irregularity on this ground, concluding as follows:
Petitioner’s instant claim falls within a narrow category of cases. To review his second or successive petition as Respondent asserts, i.e., applying § 2244(b)(2)(A) to each individual ground for relief, would be unreasonable under the procedural aspects of this case and contrary to the intentions of the statute and the mandate of the Supreme Court in Atkins. Had Petitioner initially been tried after the decision in Atkins, he could have raised his claim of mental retardation prior to or during his criminal trial and each of his propositions attacking the constitutional validity of his sentence would be available for appellate and collateral review. Under the procedural circumstances involved here, the Court sees no justification that review of Petitioner’s Atkins claim should not be any different.
As the Tenth Circuit identified, and the State conceded, Petitioner’s first habeas petition was denied in 2001. While on appeal from that denial, the Supreme Court decided Atkins, determining mentally retarded persons are ineligible for the death penalty and making its holding retroactively applicable to cases on collateral review. Petitioner returned to state court to pursue his Atkins claim in a post-conviction proceeding, where a trial was ordered by the OCCA on the issue of his mental retardation.... Pursuant to § 2244(b)(2)(A), this Court finds that Petitioner’s Atkins claim satisfies the statute’s requirements to proceed with a second or successive habeas petition, as Atkins was a new rule of constitutional law, previously unavailable to Petitioner, made retroactive by the Supreme Court to cases on collateral review. Accordingly, Respondent’s Motion to Dismiss is denied.
On appeal, Oklahoma asserts the district court erred in refusing to dismiss, pursuant to the terms of § 2244(b)(4), Ochoa’s procedural irregularity claims. The district court’s determination that Ochoa’s claims “satisfy the requirements of § 2244(b) is a legal conclusion which this court reviews de novo.” LaFevers v. Gibson, 238 F.3d 1263, 1266 (10th Cir.2001) (citation omitted).
ii. Analysis
For those reasons set out below, the court concludes Ochoa’s procedural irregularity claims are proper Atkins claims and, therefore, the district court properly denied Oklahoma’s motion to dismiss.
We begin by noting the question whether Ochoa’s procedural-irregularity claims *1142 fall within the ambit of § 2244(b)(2)(A) is one of first impression. This court has never addressed the contours of § 2244(b)(2)(A). Furthermore, it does not appear that any other circuit has addressed this question. This dearth of precedent is not surprising, given that “Atkins reflects one of the rare instances in which the Supreme Court has announced a new rule of constitutional law that it has also expressly made retroactively applicable to cases on collateral review.” Ochoa, 485 F.3d at 540.[9] Those limited precedents that do exist, however, indicate Ochoa’s procedural irregularity claims, although drawing their substance from the Fourteenth Amendment’s Due Process Clause, are based on Atkins.
The Supreme Court has made clear that its decision in Atkins “did not provide definitive procedural or substantive guides for determining when a person who claims mental retardation will be so impaired as to fall [within Atkins’ compass].” Bobby, 129 S.Ct. at 2150 (quotation omitted) (alteration in original).[10] Instead, it left “to the States the task of developing appropriate ways of enforcing the constitutional restriction” on the execution of the mentally retarded. Id. (quotation omitted). For that reason, the Court has indicated federal habeas courts should not preemptively dictate to the states matters of procedure or substance in the Atkins realm. Id. at 2153-54 (“[Federal court] intervention ... derailed a state trial court proceeding designed to determine whether Bies ha[s] a successful Atkins claim. Recourse first to Ohio’s courts is just what this Court envisioned in remitting to the States responsibility for implementing the Atkins decision. [Ohio recognizes] Bies is entitled to such recourse, [and] rightly seeks a full and fair opportunity to contest his plea under the postsentencing precedents set in Atkins and [Ohio law].” (quotation and citation omitted)); Schriro v. Smith, 546 U.S. 6, 7-8, 126 S.Ct. 7, 163 L.Ed.2d 6 (2005) (concluding Ninth Circuit erred when it preemptively ordered Arizona to use jury trial procedures to resolve Atkins claims).[11]
The Supreme Court has also indicated, however, that state court “measures for adjudicating claims of mental retardation ... might, in their application, be subject to constitutional challenge.” Schriro, 546 U.S. at 7, 126 S.Ct. 7. That is the exact situation faced by this court. Oklahoma has adopted the full-blown jury trial, “with all its historic and procedural protections,” [12] as the appropriate mechanism for *1143 resolving claims of mental retardation. Lambert v. State, 71 P.3d 30, 31 (Okla. Crim.App.2003). Ochoa has asserted certain aspects of that procedural mechanism, as applied to him, rendered his mental retardation trial fundamentally unfair. Sehriro indicates such a challenge is properly brought in a § 2254 habeas petition. 546 U.S. at 7,126 S.Ct. 7; United States v. Serawop, 505 F.3d 1112, 1122 (10th Cir. 2007) (“We are bound by Supreme Court dicta almost as firmly as by the Court’s outright holdings, particularly when the dicta is recent and not enfeebled by later statements.” (quotations omitted)).
That each of the procedural irregularities identified by Ochoa implicate protections flowing from the Fourteenth Amendment’s Due Process Clause does not change the result. “The Fourteenth Amendment’s Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake.” Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005). The liberty interest at issue in this case, the right of the mentally retarded to avoid execution, flows directly from the Eighth Amendment. Atkins, 536 U.S. at 321, 122 S.Ct. 2242 (“Construing and applying the Eighth Amendment in the light of our evolving standards of decency, we ... conclude that [the death penalty] is excessive and that the Constitution places a substantive restriction on the State’s power to take the life of a mentally retarded offender.” (quotation omitted)). Oklahoma adopted the jury trial, with its historically attendant procedural protections, as the method to vindicate that liberty interest. Ochoa’s interest in ensuring Oklahoma applied that procedure in a fundamentally fair fashion flows directly from the liberty interest announced in Atkins. Accordingly, Ochoa’s procedural irregularity claims are Atkins claims and, furthermore, those claims are properly brought in a second or successive habeas petition under the provisions of § 2244(b)(2)(A).
b. Merits
i. Jail Attire at Trial
Ochoa asserts he was denied his right to a fundamentally fair proceeding when he was forced to attend his mental retardation trial in prison garb. Estelle v. Williams, 425 U.S. 501, 504-05, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). The very basic problem with this claim of error, however, is the OCCA specifically found Ochoa chose to attend the trial in prison attire. Ochoa, 136 P.3d at 667 (“[T]he record shows Ochoa’s decision to appear before the jury in jail dress was his own. He was compelled by no one but himself.”). The OCCA’s finding of fact is entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1). In any event, the record fully supports the OCCA’s finding. Before jurors were present in the courtroom, Ochoa’s counsel indicated she wanted to make a record about Ochoa’s refusal to change out of his jail uniform. She then stated as follows: “We’re on the record. Mr. Ochoa has chosen not to dress out and he’s in orange. I don’t believe he’s cuffed, but I believe he’s in his jail uniform and he chooses to do so.” The trial court then allowed Ochoa to address the court; Ochoa complained about his counsel’s failure to call certain witnesses, but did not address the prison-garb issue.
Ochoa does not contest this sequence of events. Instead, he asserts the trial court did not “flesh out” the issue of his refusal to dress out and that it is possible his conduct was an act of defiance against trial counsel. The problem for Ochoa, however, is that even assuming his suppositions are true, they do not bear on the question whether the decision of the OCCA was contrary to or an unreasonable interpreta *1144 tion of Estelle. 28 U.S.C. § 2254(d)(1). The Court in Estelle made absolutely clear that the absence of an objection in the trial record to being forced to wear prison garb “negate[s] the presence of compulsion necessary to establish a constitutional violation.” 425 U.S. at 512-13, 96 S.Ct. 1691. Thus, the OCCA’s conclusion that the Due Process Clause was not implicated by Ochoa’s decision to proceed to trial in prison garb is entirely consistent with Estelle.
ii. Evidence of Prior Criminal Convictions
Ochoa asserts he was denied a fundamentally fair mental retardation trial when the jury learned he had been convicted of a crime. In particular, he asserts information regarding the fact of his conviction is entirely irrelevant to the question of his mental retardation and the admission of that information is at odds with Oklahoma law.[13] The OCCA rejected this claim on the merits, concluding the very limited nature of the information conveyed to the jury (i.e., the mere fact Ochoa had been convicted of some type of crime) was consistent with Oklahoma law and did not prejudice Ochoa. Ochoa, 136 P.3d at 667 (cataloging limited evidence before jury and concluding such evidence “does not create the prejudicial effect Lambert sought to avoid”).
On appeal, Ochoa reasserts that the provision to the jury of this irrelevant and prejudicial evidence rendered his trial fundamentally unfair. In response, Oklahoma asserts this is solely a matter of state law and, therefore, not a proper subject for habeas relief. Oklahoma is correct in arguing “Federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights.” Smallwood v. Gibson, 191 F.3d 1257, 1275 (10th Cir.1999). Thus, even assuming the admission of this evidence was inconsistent with state law, a proposition the OCCA conclusively rejected, that fact alone would not entitled Ochoa to habeas relief.
Nevertheless, when a state court admits evidence that is “so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief.” Payne v. Tennessee, 501 U.S. 808, 825, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). That is true without regard to whether the evidence was properly admitted pursuant to state law. Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (“[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.”). Oklahoma is correct, however, *1145 in asserting the limited criminal background evidence at issue in this case was not so unduly prejudicial as to render Ochoa’s mental retardation trial fundamentally unfair. This court has examined the entire transcript of Ochoa’s mental retardation trial and concludes there is simply nothing in the limited. information conveyed to the jury about Ochoa’s background that suggested to the jury it should decide the case on any basis other than the facts adduced at trial and the law as set out in the trial court’s instructions. Furthermore, given that Ochoa insisted on attending trial in prison garb, any potential for prejudice flowing from the provision of the background evidence as to Ochoa’s status as a convicted criminal is de minimis. Because the evidence at issue here did not render Ochoa’s trial fundamentally unfair, the district court properly denied Ochoa’s request for habeas relief.
iii. Shock Sleeve
Ochoa contends he was denied a fundamentally fair mental retardation proceeding because he was forced to wear a shock sleeve during trial. In support of this assertion, Ochoa relies on the Supreme Court’s decision in Deck v. Missouri, which held that “the Constitution forbids the use of visible shackles during the penalty phase, as it forbids their use during the guilt phase, unless that use is justified by an essential state interest— such as the interest in courtroom security — specific to the defendant on trial.” 544 U.S. 622, 624, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005) (quotation omitted). The OCCA resolved this issue on the merits on direct appeal, concluding the trial court erred in requiring Ochoa to wear the shock sleeve but the error was harmless. Ochoa, 136 P.3d at 669-70. In so doing, the OCCA specifically concluded the procedural protections animating the Supreme Court’s decision in Deck applied to Oklahoma’s system of holding jury trials to determine the issue of mental retardation. Id. at 669.[14] Nevertheless, the OCCA held Ochoa was not entitled to relief because (1) there was nothing in the record indicating the shock sleeve was visible to the jury and (2) Ochoa did “not claim the shock sleeve prevented him from physically or mentally assisting his counsel at the mental retardation hearing.” Id. at 670.
The OCCA’s resolution of this claim is neither contrary to nor an unreasonable application of Deck. As .Deck makes clear, it is the potential impact on the jury of visible restraints that implicates the fundamental fairness of a jury trial proceeding. 544 U.S. passim, 125 S.Ct. 2007 (focusing on the use of “visible” restraints); see also United States v. McKissick, 204 F.3d 1282, 1299 (10th Cir.2000) (refusing to presume prejudice where defendants were forced to wear stun belts at trial, but belts were not *1146 visible to jurors); United States v. Baker, 432 F.3d 1189, 1245-46 (11th Cir.2005) (concluding district court’s failure to justify shackling was not an abuse of discretion where, among other things, shackles were not visible to jurors); Mendoza v. Berghuis, 544 F.3d 650, 654 (6th Cir.2008) (“Deck’s facts and holding ... concerned only visible restraints at trial. The Supreme Court was careful to repeat this limitation throughout its opinion.”). Ochoa does not challenge the OCCA’s finding that the shock sleeve he was forced to wear during his mental retardation trial was not visible to the jury. Given that uncontested finding, which is in any event entitled to a presumption of correctness, 28 U.S.C. § 2254(e)(1), the OCCA’s resolution of this claim is clearly consistent with Deck[15]
C. Cumulative Error
Ochoa asserts that even if the individual errors identified above do not entitle him to relief, the cumulative impact of those errors rendered his mental retardation trial fundamentally unfair. See Matthews v. Workman, 577 F.3d 1175, 1195 n. 10 (10th Cir.2009) (“In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial’s fundamental fairness.” (quotation omitted)). Here the only demonstrated federal constitutional error is the decision to force Ochoa to wear a shock sleeve at trial. For those reasons set out above, the OCCA’s determination that this particular error was harmless is neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. Because there are no additional constitutional errors to aggregate, Ochoa’s cumulative error claim necessarily fails.
V. CONCLUSION
For those reasons set out above, the order of the United States District Court for the Western District of Oklahoma denying Ochoa’s § 2254 habeas petition is hereby AFFIRMED.

. Pending before this court is Ochoa’s request for an expanded certificate of appealability ("COA”). To obtain the benefit of Atkins, an Oklahoma defendant facing the death penalty must prove, by a preponderance of the evidence, he is mentally retarded. Ochoa v. State, 136 P.3d 661, 665 (Okla.Crim.App. 2006). In his habeas petition, Ochoa asserted this aspect of Oklahoma law is contrary to Atkins. The district court disagreed. Ochoa seeks an expanded COA so he can appeal the district court’s denial of habeas relief as to this issue.
To be entitled to a COA, Ochoa must make "a substantial showing of the denial of a constitutional right.” 28 U.S.C. § 2253(c)(2). That is, he must demonstrate "reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.” Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (quotations omitted). Ochoa cannot satisfy this standard. The Supreme Court specifically left to the various states "the task of developing appropriate ways to enforce the constitutional restriction” on the execution of mentally retarded criminals. Atkins v. Virginia, 536 U.S. 304, 317, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (quotation omitted). In an analogous context, the Court specifically approved placing the burden on a defendant of demonstrating, by a preponderance of the evidence, his incompetence to stand trial. Medina v. California, 505 U.S. 437, 450-52, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992). Furthermore, of those jurisdictions that impose the death penalty, none impose on the government the burden of disproving mental retardation. Hill v. Humphrey, 662 F.3d 1335, 1354-56 (11th Cir.2011) (en banc). Instead, the overwhelming majority place the burden in a way identical to Oklahoma law. Id. The district court’s conclusion that Oklahoma law is neither contrary to, nor an unreasonable application of Atkins is simply not debatable. See Williams v. Taylor, 529 U.S. 362, 405-413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (defining § 2254(d)(1)'s "contrary to” and "unreasonable application of” prongs and holding it is a difficult task to meet either standard). This is especially true because to prevail on this claim in Oklahoma, a defendant need only convince one juror the defendant is mentally retarded. Lambert v. State, 71 P.3d 30, 32 (Okla.Crim. App.2003) ("If there is no unanimous verdict either finding or rejecting mental retardation, the trial court will resentence [Defendant] to life imprisonment without parole. This is in keeping with the low burden of proof; on a question of this constitutional magnitude, if jurors cannot agree on whether it is more likely than not that [Defendant] is retarded, [Defendant] will receive the benefit of that doubt.”).

. On December 1, 2011, this court affirmed the district court's denial of Ochoa’s § 2254 habeas petition in No. 02-6032. Ochoa v. Workman, 451 Fed.Appx. 718, 738, No. 02-6032, 2011 WL 6000510, at *17 (10th Cir. Dec. 1, 2011) (unpublished disposition).

. "Though this appeal remains part of Mr. Ochoa's post-conviction case, we will review errors alleged to have occurred in this jury trial on mental retardation in the same manner as errors raised on direct appeal from a trial on the merits.” Ochoa, 136 P.3d at 664.

. As noted by the district court, Ochoa’s arguments in this regard ignore those portions of Atkins with a temporal focus other than the time of the commission of the crime. In particular, in concluding the Eighth Amendment prohibited the execution of the mentally retarded, the Court relied heavily on the general inability of the mentally retarded to meaningfully participate in their defense:
The reduced capacity of mentally retarded offenders provides a second justification for a categorical rule making such offenders ineligible for the death penalty. The risk "that the death penalty will be imposed in spite of factors which may call for a less severe penalty,” Lockett v. Ohio, 438 U.S. 586, 605, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), is enhanced, not only by the possibility of false confessions, but also by the lesser ability of mentally retarded defendants to make a persuasive showing of mitigation in the face of prosecutorial evidence of one or more aggravating factors. Mentally retarded defendants may be less able to give meaningful assistance to their counsel and are typically poor witnesses, and their demeanor may create an unwarranted impression of lack of remorse for their crimes.... [M]oreover, reliance on mental retardation as a mitigating factor can be a two-edged sword that may enhance the likelihood that the aggravating factor of future dangerousness will be found by the jury. Mentally retarded defendants in the aggregate face a special risk of wrongful execution.
Atkins, 536 U.S. at 320-21, 122 S.Ct. 2242 (citation and footnote omitted).

. Ochoa advocates a fluid definition of mental retardation because his available IQ scores closer to the time of the murders were lower than scores on tests taken closer to the time of his mental retardation trial. See Ochoa, 136 P.3d at 665.

. That is not to say, however, that there is no such authority. The Fourth Edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV”), the diagnostic tool referenced by Ochoa’s expert during her testimony, provides as follows:
Mental retardation is not necessarily a lifelong disorder. Individuals who had Mild Mental Retardation earlier in their lives manifested by failure in academic learning tasks may, with appropriate training and opportunities, develop good adaptive skills in other domains and may no longer have the level of impairment required for a diagnosis of Mental Retardation.
American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 44 (4th ed.1994). The DSM-IV defines "Mild Mental Retardation” as an “IQ level 50-55 to approximately 70.” Id. at 40. Finally, the DSM-IV makes clear that the ability to outgrow mental retardation is tied to potential improvement in adaptive functioning, rather than IQ changes. Id. ("Problems in adaption are more likely to improve with remedial efforts than is the cognitive IQ, which tends to remain a more stable attribute.").
Ochoa’s theory at trial is inconsistent with the diagnostic criteria set out in DSM-IV. Ochoa's own expert testified he was not likely mentally retarded at the time of the trial. In an effort to overcome this undisputed fact, trial counsel asked the expert to opine on the question whether Ochoa was likely mentally retarded at the time of the crime. In particular, trial counsel focused the expert's attention on those IQ scores obtained in close temporal proximity to the crime, because those few scores were considerably lower than a more recent test. Then, during closing *1138 argument, trial counsel argued mental retardation is a fluid concept and that IQ scores can improve over time. On this basis, trial counsel asked the jury to conclude Ochoa was mentally retarded at the time of his commission of the crime. As set out above, however, this theory of mental retardation is not consistent with the DSM-IV and Ochoa has not offered any citations to any authority supporting such a medical definition of mental retardation. That being the case, Ochoa cannot offer a persuasive argument that his proffered definition of mental retardation is the only definition consistent with Atkins.

. See also 28 U.S.C. § 2244(b)(3)(A)-(B) (providing that no second or successive § 2254 petition can be filed in district court without *1141 authorization from a three-judge panel of the court of appeals); id. § 2244(b)(3)(C) (providing that this court may authorize the filing of a second or successive § 2254 petition only if a proposed application “makes a prima facie showing that the application satisfies the requirements” of § 2244(b)(2)).

. See also LaFevers v. Gibson, 238 F.3d 1263 (10th Cir.2001) ("Upon the filing of [a] second § 2254 petition [authorized by the circuit court], the district court was obligated to determine whether the petition did, in fact, satisfy the requirements of § 2244(b).”).

. Indeed, since the passage of the AEDPA in 1996, it appears Atkins represents the only such new rule.

. As this quotation should make clear, the mere absence of procedural guidelines in Atkins, standing alone, does not justify a conclusion that Ochoa’s procedural irregularity claims are not Atkins claims for purposes of § 2244(b)(2)(A). As Bobby recognizes, Atkins is also bereft of substantive guidance as to the meaning of the term "mental retardation." Bobby v. Bies, 556 U.S. 825, 129 S.Ct. 2145, 2150, 173 L.Ed.2d 1173 (2009). If the mere absence of guidance was sufficient to preclude review under § 2244(b)(2)(A), Ochoa's challenge to Oklahoma's definition of "mental retardation” would also be outside the ambit of § 2244(b)(2)(A). Oklahoma does not, however, argue for such a result on appeal. Furthermore, such a reading of § 2244(b)(2)(A) would render meaningless the Supreme Court’s decision to make Atkins retroactive to cases on collateral review.

. See also Hill, 662 F.3d at 1351-52 (concluding Georgia procedural rule requiring defendants to prove mental retardation beyond a reasonable doubt is not contrary to or an unreasonable application of Atkins and asserting a contrary result would "ignore the clear language of Atkins ... about who is to decide what procedures are to be used to determine mental retardation”).

. United States v. Essex, 734 F.2d 832, 844 (D.C.Cir.1984).

. In support of his assertion that the revelation to the jury of the fact of his conviction is at odds with Oklahoma law, Ochoa cites to the decision of the OCCA in Lambert describing the purpose of a mental retardation trial:
The proceeding on remand is solely devoted to the question of Lambert’s mental retardation. Both parties may call witnesses and present evidence bearing on mental retardation. Lambert's criminal conviction and death sentence are not relevant to this issue. The jury should not hear evidence of the crimes for which Lambert was convicted, unless particular facts of the case are relevant to the issue of mental retardation. Any such evidence should be narrowly confined to that issue. The jury should not hear evidence in aggravation or mitigation of the murders for which Lambert was convicted, or any victim impact evidence. The only issue is whether Lambert meets [Oklahoma’s] definition for mental retardation. The jury shall be convened to discover whether Lambert can show it is more likely than not that he is mentally retarded.
71 P.3d at 31 (footnote omitted).

. In this regard, the OCCA concluded as follows:
Although Respondent admits [Oklahoma statutory law] is applicable to the use of a "shock sleeve,” it argues the statute is inapplicable to this case because Ochoa was forced to wear the sleeve at a mental retardation jury trial after he had already been convicted. We do not agree. The application of [Oklahoma statutory law] logically extends to any fact-finding trial processes. As the Supreme Court found in Deck, a jury's observation of a defendant in visible restraints undermines its ability to weigh accurately all relevant considerations. It implies the defendant is dangerous and almost assuredly affects the jury's perception of the defendant’s character. Although a defendant’s dangerousness has nothing to do with a finding of mental retardation, speculation on the defendant’s character based upon observation of visible restraints diverts the jury's attention from' its fact-finding mission — in this case, its consideration of the evidence relevant to the determination of a defendant's mental retardation.
Ochoa, 136 P.3d at 669.

. Ochoa asserts, in a perfunctory manner, that he was prejudiced by the forced use of the shock sleeve because "[s]hock sleeves have the effect of making the accused less spontaneous, less expressive, and more rigid than he otherwise would be. Jurors pick up on these things and wonder why certain things occur....” Because Ochoa did not raise this assertion before the district court, we decline to consider the matter. Rhine v. Boone, 182 F.3d 1153, 1154 (10th Cir.1999) (holding this court will generally not consider an issue raised for the first time on appeal). In any event, this assertion of prejudice is not supported by a single citation to authority or the record and is therefore forfeited. United States v. Wooten, 377 F.3d 1134, 1145 (10th Cir.2004) ("The court will not consider such issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.” (quotation omitted)).