**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 31, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOE GENE SANDERS,

      Petitioner - Appellant,

v.

DAVID MILLER, Warden,

      Respondent - Appellee.

No. 13-5083
(D.C. No. 4:10-CV-00567-TCK-TLW)
(N.D. Okla.)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

---

Before **HARTZ**, **GORSUCH**, and **PHILLIPS**, Circuit Judges.

---

The trouble began when Javier and Jesus Carranza approached a dancer at a strip club and offered to pay her for sex. The dancer seemed to agree and suggested they meet back at her apartment. In the event, though, she contacted her boyfriend and devised a plot to rob the two men. By the end of it all, both men were shot and one lay dead.

Here's how it happened. The Carranzas followed Brandi Lindsey and her fellow dancer and friend, Triston Fleetwood, to Ms. Lindsey's apartment building.

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Outside the building, Joe Sanders and his friend, Keynon Owens, were lying in wait. When the Carranzas arrived, Mr. Sanders emerged from the shadows and told them, "[G]ive me your money." When the Carranzas chose to flee instead, Mr. Sanders shot both men in the back. Mr. Sanders then stood over Javier Carranza, said "I told you not to run," and shot him again for good measure. Javier died in the parking lot. Jesus was eventually transported to the hospital and survived.

Hearing a racket outside her apartment building, Elizabeth Milliken awoke to what she thought was the sound of firecrackers. She opened her door "to yell at the kids" to knock it off. When she did, she saw the shooting as it took place. Ms. Milliken grabbed her cellphone, called 911, and rushed to Javier Carranza in an unsuccessful attempt to save his life.

The next day, police questioned Ms. Lindsey and Ms. Fleetwood and, after some initial dissembling, the pair wound up telling officers everything. Including that Mr. Sanders was the shooter.

An Oklahoma jury eventually convicted Mr. Sanders of first degree murder and other charges. When his direct appeal and separate collateral attack on the convictions failed in state court, he turned to federal court, seeking relief under 28 U.S.C. § 2254. Mr. Sanders argued that Oklahoma violated his federal constitutional rights in a variety of different ways. The federal district court

disagreed and issued a detailed memorandum and order denying Mr. Sanders's

petition and his request for a certificate of appealability (COA).

Now before us, Mr. Sanders renews his request for a COA.[1]  We may grant

a COA only if the petitioner first makes a "substantial showing of the denial of a

constitutional right," supplying this court with grounds to think reasonable jurists

could at least debate whether his petition should have been resolved in a different

manner than the district court provided.  *See* 28 U.S.C. § 2253(c)(2); *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000).  Mr. Sanders identifies two claims he

wishes to pursue in this court, one new and one old.  In neither case, however, do

we see a debatable argument that might permit us to grant a COA.

First, Mr. Sanders argues that he was denied effective assistance of counsel

at trial.  But Mr. Sanders never raised this argument before the district court and

generally, "we do not address arguments presented for the first time on appeal."

*United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012).  Neither has Mr.

Sanders suggested any reason why we should deviate from that rule here.

Second, Mr. Sanders argues that the state trial court admitted improper

evidence against him.  At trial, Tulsa Police Detective Jeff Felton was permitted

to testify that, shortly after the shooting, the surviving cousin, Jesus Carranza,

---

[1] Mr. Sanders's notice of appeal, which includes a stamp from his prison's legal mail system, confirms that he placed the document in his prison's mail system within thirty days of the district court's judgment.  Accordingly, his appeal is timely under the prison mailbox rule.  *See* Fed. R. App. P. 4(c)(1); *Price v. Philpot*, 420 F.3d 1158, 1163-64 (10th Cir. 2005).

identified Mr. Sanders as the shooter. On direct appeal to the Oklahoma Criminal Court of Appeals, Mr. Sanders argued that the admission of this evidence not only violated state law but also his Sixth and Fourteenth Amendment rights.

For its part, the OCCA agreed that the trial court erred but held the error didn't trench on his federal constitutional rights. It didn't, the OCCA said, because when viewed in the context of the whole trial the error was "harmless beyond a reasonable doubt." In support of its conclusion, the OCCA cataloged the trial evidence against Mr. Sanders: Ms. Lindsey testified she saw the Carranzas run and watched Mr. Sanders gun them down; Ms. Fleetwood testified that she watched Mr. Sanders stand over one of the men and shoot him in the head; Ms. Milliken testified that she was confident Mr. Owens was not the shooter. The OCCA also emphasized that Mr. Sanders had a chance to confront Jesus Carranza at trial. To be sure, that trial testimony was confused. At first he testified that Mr. Owens was the shooter, then he said it was Mr. Sanders. But all of this meant, as the OCCA pointed out, that Mr. Sanders was able to make the jury "well aware . . . that Jesus Carranza was having trouble saying for sure which of the co-defendants was the shooter." In light of the opportunity Mr. Sanders did have to confront Jesus Carranza and develop this point, as well as the testimony of Ms. Lindsey, Ms. Fleetwood, and Ms. Milliken, all of which pointed to him as the shooter, the OCCA held the error in allowing the use of the out-of-court identification at trial was, beyond a reasonable doubt, harmless.

Where, as here, a federal constitutional claim has been "adjudicated on the merits in State court proceedings," a federal court may grant habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under our (uncontested) precedents, Mr. Sanders bears the burden of identifying that clearly established Supreme Court law. *See Hyberg v. Milyard*, 436 F. App'x 843, 846 (10th Cir. 2011) ("A habeas petitioner has the additional burden of showing that the state court adjudication of his claim was either contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States[.]" (internal quotations omitted)); *see also, e.g.*, *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002); *Ochoa v. Workman*, 669 F.3d 1130, 1138 (10th Cir. 2012). Yet he has not even attempted to identify Supreme Court authority that the OCCA defied or unreasonably applied. Whether we might have reached a different conclusion than the OCCA on the merits, Mr. Sanders has given us no reason to think the OCCA's harmless error analysis was an unreasonable application of federal law, and thus no reason to think the district court's denial of relief was debatable. Indeed, it is long settled law that Sixth Amendment confrontation clause and Fourteenth Amendment fair trial rights are subject to harmless error analysis. *See generally Brecht v. Abrahamson*, 507 U.S.

619, 631 (1993) (requiring evidence that the claimed error "had substantial and injurious effect or influence in determining the jury's verdict").

Mr. Sanders's request for a COA is denied and this matter is dismissed.


ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge